UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAM RUBICON GLOBAL, LTD., a Delaware Corporation <br><br> *Plaintiff,* <br><br> v. <br><br> TEAM RUBICON, INC., a Minnesota Corporation <br><br> *Defendant,* <br><br> TEAM RUBICON, INC., a Minnesota Corporation <br><br> *Counterclaim Plaintiff,* <br><br> v. <br><br> TEAM RUBICON GLOBAL, LTD., a Delaware Corporation <br><br> *Counterclaim Defendant.* | Civ. No. 20-cv-2537 (LTS) (KNF) |

**DECLARATION OF BRYAN RIDDELL**

BRYAN RIDDELL, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury of the laws of the United States of America as follows:

1.  I am over the age of 18 years old, and reside in Toronto, Canada. I am the Chief Executive Officer of Team Rubicon Canada ("TR-CAN"), a third-party to the above captioned action. In addition to this role, I am also a Primary Reserve Officer in Canadian Special Operations Forces Command. I received my undergraduate degree from St. Andrew's Presbyterian College, and a Master's Degree in Business Administration from Cornell. I have served with TR-CAN since May, 2018. I submit this declaration in support of Defendant and Counterclaim Plaintiff Team Rubicon Inc.'s ("Team Rubicon") Motion for Preliminary

Injunction. I have personal knowledge of the facts set forth in this declaration and am competent to testify to such facts if called as a witness.

      A.      **THE FORMATION OF TEAM RUBICON CANADA**

2.      There are several benefits to being a charitable organization associated with the Team Rubicon brand. For one, the brand is recognizable throughout the globe as signifying a large, credible, and well-run charitable organization. Team Rubicon is known throughout the non-profit community as highly effective and efficient, and associating ourselves with that type of reputation was important to us as we started our organization.

3.      To obtain rights to use the "Team Rubicon" brand, TR-CAN entered into a sub-license agreement with TRG. TRG held a license to Team Rubicon's intellectual property by virtue of a Master Trademark License Agreement ("MTLA") between TRG, on the one hand, and Team Rubicon, on the other. From my experience, TRG's purpose was to export and ensure the protection of Team Rubicon's brand outside the United States, by making sure that TR-CAN and other country-affiliates in the Team Rubicon network, known as TR-Xs, adhered to the quality standards of Team Rubicon's marks and preserved Team Rubicon's reputation.

      B.      **THE AUGUST 2019 CONFERENCE**

4.      In mid-August 2019, Team Rubicon hosted a multi-day leadership conference in Estes Park, Colorado. I attended the conference.

5.      On August 17th, I was informed that a volunteer had been subjected to behavior that included unwanted sexual advances from the CEO, Team Rubicon United Kingdom ("TR-UK") and sexually inappropriate remarks by CEO, Team Rubicon Australia ("TR-AUS"). The victim expressed to the TR-CAN CEO that she was extremely upset by this behavior. She claimed that other individuals witnessed the events as well.

6. While allegations of sexual harassment are serious in their own right, TR-CAN takes such allegations particularly seriously given its composition of veterans and involvement in the veteran community in Canada. This is in part because, in 2015, the Canadian Armed Forces launched a formal operation—"Operation Honour"—in response to a scathing review of the community, which alleged that sexual harassment, misconduct, and assault was a significant issue within the Canadian Armed Forces. Since then, there has been a significant shift in Canada's military and veteran culture; namely, allegations of a sexual nature are discussed openly and honestly, and there is very little tolerance for sexually inappropriate behavior—particularly within military communities. As a result, TR-CAN's core policies and positions on sexual misconduct and harassment of any kind are deeply ingrained into our everyday operations. For example, these policies are enforced on each and every deployed operation and training effort undertaken by TR-CAN, and these polices are posted openly during all major field activities.

7. TR-CAN always takes the position that allegations of sexual misconduct and harassment need to be taken seriously and investigated thoroughly. In addition to its moral obligation to provide a safe, inclusive, and harmonious environment for its staff and volunteers, TR-CAN believes that, from a risk-mitigation perspective, the failure of an organization to respond appropriately to such allegations jeopardizes credibility, goodwill, and risks serious reputational harm.

8. After the victim approached me, I decided immediately that TR-CAN had an obligation to take the allegations seriously and to respond appropriately. As a result, I contacted Team Rubicon to request that they launch a formal investigation, and subsequently notified TRG, and the TR-CAN Board to discuss the allegations and immediate steps taken.

9. Team Rubicon was in the best position to investigate the matter for a handful of reasons: *first,* Team Rubicon—as the core leader of the Team Rubicon Network and a large organization— had more resources and personnel with expertise than TR-CAN to handle an investigation, particularly in light of Team Rubicon's established human resources team; *second*, as the host of the conference, Team Rubicon had closer proximity to witnesses; *third*, Team Rubicon had no relationship to either the victim or the accused CEOs, and thus seemed best positioned to conduct an un-biased and independent review of the circumstances. Accordingly, the TR-CAN Board supported my decision to request Team Rubicon's help.

10. Team Rubicon agreed to honour our request, and performed a full investigation of the allegations. Team Rubicon released a full report detailing its findings; I read the report and was deeply disturbed, disappointed, saddened, and frustrated by what was presented.

11. The Team Rubicon investigation not only determined that the allegations were credible, but it discovered that the CEO of TR-UK committed additional improper acts, including sexual harassment of another individual and bullying of a junior female volunteer. Team Rubicon's report indicated that, had the CEOs been employees of Team Rubicon, they would have been fired for cause.

12. After completion of Team Rubicon's investigation, the TR-CAN Board learned that TR-UK and TR-AUS wanted to conduct their own investigation. TR-CAN respected that request, and understood their desire to come to their own conclusions and gather additional evidence.

13. As part of their independent investigations, I learned that criticisms had been raised by TR-UK and TR AUS over the Team Rubicon investigation. While I did not have visibility into the concerns, I spoke to then TRG CEO, Stephen Hunt, to inform them that if TRG

believed the Team Rubicon investigation was flawed, or biased, that TR-CAN would support a TRG-led investigation as an additional neutral party. To my knowledge, no further action was pursued by TRG.

14.     The TR-CAN Board and I were frustrated with the outcome of the TR-UK investigation and decision to retain the TR-UK CEO, and we were all concerned about the future of the Team Rubicon Network as a result. I believe, and continue to believe that TR-UK and TR-AUS' continued retention of their CEOs would certainly have a negative impact on the Team Rubicon brand, and more specifically, on TR-CAN's ability to fundraise, recruit volunteers, and maintain its credibility with the Canadian population. Further, and most sacred to me, TR-CAN would not be in a position to collaborate with these organizations on international operations, if they could not guarantee the safety of volunteers from a culture of sexual misconduct. This was particularly concerning given the determinations made by the TR-UK investigation.

15.     On November 5, 2019, TR-CAN conveyed its position on the issues to TRG via letter, which I helped draft. A true and correct copy of this letter is attached hereto as Exhibit A.

16.     In the letter, TR-CAN wrote that, based on TR-UK's own investigation, "there was sufficient evidence of gross misconduct of a senior TR leader, to necessitate more stringent and corrective measures" and that TR-CAN's Board was "ultimately concerned that the TR-UK response to the findings of their own investigation is not firm enough, [and] not corrective enough, to protect the brand, culture and future of the TR network." The letter closed by emphasizing a need for "a shared understanding of, and mutual appreciation for the espoused values of Team Rubicon, and a clear understanding as to how we will hold ourselves and each other to account around those values." TR-CAN likewise requested TR-UK to "urgently address how issues of this nature will be best handled in the future."

17. TR-CAN was informed by Team Rubicon that, in September of 2019, Team Rubicon requested that TRG take certain actions to ensure the safety of employees and volunteers within the Team Rubicon Network as well as to protect the Team Rubicon brand. These actions included: (1) immediately prohibiting the CEO's from participating in all ongoing and future Team Rubicon activities; (2) timely censuring and terminating the CEO's of TR-UK for cause; (3) forbidding TRG, TR-UK, and TR-AUS from contacting the victim, or any witnesses to the subject conduct for the protection of such individuals, and (4) requiring that TR-UK and TR-AUS retrain their paid staff and regular volunteers on harassment prevention. TR-UK and TR-AUS did not implement these measures or otherwise respond to Team Rubicon's request.

18. As a result of TR-UK's decision to retain their CEO, we were informed by Team Rubicon that TRG was in breach of its obligations under the MTLA, and that TRG's license would be terminated in December of 2019. Team Rubicon explained that once the MTLA was terminated, TRG's license to the TR Marks would be revoked, and in turn, so would TR-CAN's sublicense. Team Rubicon informed TR-CAN that it would then need to license the TR Marks directly from them, as the rightful owner.

19. On December 16, 2019, after being told that Team Rubicon had validly terminated TRG's license to the TR Marks under the MTLA, TR-CAN informed TRG in writing that it was terminating its relationship with TRG and entering into a new licensing relationship with Team Rubicon. TR-CAN now has a temporary license agreement with Team Rubicon, with long term license agreement currently under development.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of April, 2020, in Oakville, Ontario, Canada.

_____
Bryan Riddell
Team Rubicon Canada