# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAM RUBICON GLOBAL, LTD., a Delaware Corporation<br><br>*Plaintiff,*<br><br>v.<br><br>TEAM RUBICON, INC., a Minnesota Corporation<br><br>*Defendant,*<br><br>TEAM RUBICON, INC., a Minnesota Corporation<br><br>*Counterclaim Plaintiff,*<br><br>v.<br><br>TEAM RUBICON GLOBAL, LTD., a Delaware Corporation<br><br>*Counterclaim Defendant.* | Civ. No. 20-cv-2537 (LTS) (KNF) |

## THIRD DECLARATION OF JACOB WOOD

JACOB WOOD, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.  I am over the age of 18 years old, and reside in Redondo Beach, CA. I am the co-founder and CEO of Team Rubicon, Inc. ("Team Rubicon"), the Defendant and Counterclaim Plaintiff in this action. I also sit on the Board of Directors for Team Rubicon (the "Board"). Prior to founding Team Rubicon, I was a Sergeant in the United States Marine Corps and was deployed in both Afghanistan and Iraq. I submit this third declaration in connection with Team Rubicon's Motion for Preliminary Injunction. I have personal knowledge of the facts set forth in this declaration and am competent to testify to such facts if called as a witness.

2. As set forth in my Second Declaration submitted to this Court on May 8, 2020, Team Rubicon and TRG settled and agreed upon the scope of TRG's ability to fundraise and conduct other charitable activities, so that TRG's actions and provision of services would sync with, and not duplicate, Team Rubicon's own fundraising and provision of charitable services. On several occasions, TRG would act outside of this agreed upon scope, causing friction between Team Rubicon and TRG.

3. This friction was well known within the Team Rubicon Network, and there were often open discussions about potential solutions to such friction, which included conversations about the possibility of disbanding TRG. Indeed, TRG would often participate in such discussions and would sometimes initiate them. I participated in one such discussion initiated by TRG Board member Nicholas Parker in October 2018. I have read the supplemental declaration of William McNulty submitted to this Court on May 9, 2020. Attached to Exhibit 10 of Mr. McNulty's declaration is a copy of a memorandum submitted by Mr. Young to the TR-CAN Board. I believe that this memorandum was referencing the open conversation I had in October 2018, whereby I expressed the possibility of disbanding TRG in the context I reference above. Despite the contents of this memorandum, Team Rubicon never pursued the option to disband TRG, and the parties continued to work through these operational issues following this conversation.

4. After months of negotiations with TRG continued amicably, a strategic realignment of TRG was contemplated. Attached hereto as Exhibit A is a true and correct copy of a letter from TRG to Team Rubicon, dated July 8, 2019, which outlines the contemplated framework of that strategic realignment and was the product of months of negotiation between Team Rubicon Board Chairman Adam Miller and TRG Board Chairman Geoff Trukenbrod. As

demonstrated by the letter, the realignment agreement was close to being formalized by TRG and Team Rubicon in July of 2019. As a result, at the time of the Team Rubicon conference in August 2019, TRG and Team Rubicon expected to soon resolve their issues based on the realignment agreement.

5. These negotiations and the anticipated realignment agreement had no impact on Team Rubicon's ultimate decision to terminate the MTLA as a result of TRG's failure to exercise proper control over its sublicensees as detailed in my previous declarations submitted to this Court.

6. Mr. McNulty's supplemental declaration also references "allegations of sexual misconduct at TR UK and TRUSA, respectively, … including in relation to the TR USA CFO." In January of 2018, I was made aware that our CFO was engaged in a consensual romantic relationship with a junior employee. Our company believed this relationship to be inappropriate and not in alignment with the expectations Team Rubicon sets for its executive leaders, so I demanded that the CFO tender his immediate resignation, which he did. While I understand that Mr. McNulty's supplemental declaration raises this situation in order to paint a negative picture of Team Rubicon's culture, I believe that our response to the situation in demanding his resignation—which occurred almost immediately after the relationship came to light—demonstrates Team Rubicon's commitment to, and consistency with, its policies and values. Team Rubicon has taken the same action with respect to inappropriate workplace conduct that it requested TRG require its sublicensees take in response to the August 2019 incidents. TRG and its sublicensees (the "TR-Xs") have failed to take these actions.

7. Attached hereto as Exhibit B is a true and correct copy of the sublicense agreement between TRG and TR-UK. It is my understanding that all material terms present in

Exhibit B appear in the finalized agreement between TRG and TR-UK, and that this agreement was in effect until Team Rubicon terminated the MTLA on December 9, 2019.

       8.     I am aware that TRG has conducted training of the TR-Xs, including leadership and procedure trainings, and conducts audits of each of the TR-Xs on a regular basis.

Executed on this 15th day of May 2020 in Redondo Beach, CA.

_(signature)_
JACOB WOOD
Team Rubicon, Inc.