# EXHIBIT A



July 8, 2019


Adam Miller, Chairman
Team Rubicon
6171 W. Century Blvd., Suite 310
Los Angeles, CA 90045


**Re: Team Rubicon Global Strategic Realignment**

Dear Adam,

Thank you for taking the time to discuss the relationship between Team Rubicon, a Minnesota corporation (**TR-USA**) and Team Rubicon Global. Ltd., a Delaware nonstock corporation (**TRG**). I think that you and I have made progress in reaching alignment about a path forward for these organizations that would allow the future expansion of the Team Rubicon Network (**TR Network**) and provide the support that the Team Rubicon Country Units (**TR-X's**) want and need.

To that end, I propose we consider a strategic realignment, documented in a binding agreement. This note is intended to provide the framework for that binding agreement. We would like to build off that which already exists and strengthen it to better support the Country Units; strengthen and empower the Country Council; ensure fair representation for certified and emerging Country Units; increase accountability; and strengthen the TR Network.

To those ends we propose:

1. TR-USA and TRG would enter into a new agreement which will maintain the existing licensing and sublicensing arrangement, as well as continue to give TRG the ability to sublicense.

2. TRG, with TR-USA's assistance, would work to strengthen and support the four existing TR-X's and only then continue to expand the model to new countries. Any such expansion would be subject to the agreement of the Country Council and the TRG Board.

3. TRG would help to strengthen and empower a Country Council that would take over much of the governance of the network. TRG would facilitate the Country Council. The TRG Board would serve to resolve disputes that need to be escalated beyond the Country Council.

4. The TR Network is composed of TR-USA, TRG, and all TR-Xs in receipt of a license or preparing for licensing.





5. The Country Council will be the highest representative and operational decision-making body within the Network.

   a. The Country Council will be composed of the CEO's from each TR-X.
   b. The Country Council is charged with shaping network strategy, approving collective standards per the Master License Agreement, approving new Provisional and Permanent Members of the Network and other matters related to the development of the network and operations outside the territory of any TR-X home country.
   c. The Country Council will meet at least semi-annually, on topics of relevance to the Network. The Country Council will adopt and modify the list of matters which are the purview of the Country Council and establish or revise TR Network program standards.
   d. Operational and tactical decisions (e.g. international deployments) will remain the exclusive purview of the Country Council to facilitate the operational timeliness of decision making on such matters.
   e. From a process perspective, the Country Council will be expected to document evolving processes, adopt program standards and unambiguous expectations for TRG and the TR Network following each regular convening, and provide written summaries of actions taken or decisions made by the Country Council to each Country Council representative's respective Board.
   f. The TRG CEO will serve as an ex-officio, non-voting member of the Country Council and will chair Country Council meetings.

6. The TRG Board will be comprised of the Board Chairman of each permanent Country Unit (for the sake of clarity, TR-USA, TR-UK, TR-CAN, TRA-AUS, TR-NOR), the CEO of TRG (ex officio), Jake Wood (in perpetuity), William McNulty (in perpetuity), and two (2) Independent Directors. Future provisional Country Unit delegates may serve as non-voting observers of the board.   If there is an independent member vacancy, the TRG Board directors will make best efforts to fill the role with an acceptable candidate as defined in the TRG Board by-laws and elected upon a unanimous vote of the TR-X Board Chairs. The TRG Board shall take no action nor vote upon any issue until such time as any independent vacancy has been filled. The initial independent directors shall be Geoff Trukenbrod and David Chinn.

7. TRG will endeavor to maintain its existing funders (**TRG Donors**), the relationship of which will be transferred to or coordinated with TR-USA, depending on the desires of the funder, but will otherwise be funded by TR-USA for the next three years. For the sake of clarity, funding from TR-USA to TRG





would be incremental to existing funders, the combination of which not to exceed the agreed upon annual budget amount. Thereafter, TRG would be funded by the network. To the extent that there is a shortfall in TRG's funding after the three years, TR-USA would continue to fund the unfunded portion of TRG's budget. Any cash on hand at TRG at the time of this agreement will be maintained as a reserve at TRG, up to an amount equal to TRG's budgeted operating expenses for any subsequent six (6) month period. For the avoidance of doubt, TRG would not seek additional funding unless requested by a TR-X where they identify a funder in their home country who desires to fund the network rather than an individual TR-X.

8.  TRG will operate within an annual budget for each of the next three years which is attached hereto as an exhibit and will be incorporated into the binding agreement; the budget will include direct grants to TR-X's.

9.  The TRG annual operating budget, exclusive of direct grants to TR-X's, will automatically increase 3.5% per annum each year thereafter. Any material changes to the budget during the initial two years or thereafter will require approval a super-majority (>2/3) of the Board of TRG, including approval by TR-USA (for so long as TR-USA represents 50% or more of the TR Network funding for TRG, exclusive of funding provided by TRG Donors). For the sake of clarity, the affirmative vote of the TR-USA representative to the TRG Board shall be considered approval by TR-USA.

10. Brand and program standards for adoption by TRG and the TR Network will be documented and incorporated into the license and sublicenses. Such program standards are intended to be broad enough to allow for specific programs to differ by country unit so long as they are consistent with the mission of Team Rubicon and the standards. Any material changes to these standards will require the approval of a super-majority (>2/3) of the Board of TRG, including approval by TR-USA.

11. TRG will facilitate peer-to-peer Country Unit interaction and help leverage resources of the Country Units, including TR-USA, for the broader benefit of the TR Network.

12. Existing and new Country Units would sign on to a funding agreement whereby they commit, upon their achievement of certain financial milestones, to fund their pro-rata share of the TRG budget after the initial three years of this agreement. Contribution to the TRG budget would be determined by the following formula, with multi-year gifts accrued per annum:
Country Unit Contribution = Annual TRG Budget x (Country Unit TTM Revenue / Sum of TTM Revenue of all Country Units).





13. TRG would relocate its Headquarters outside the USA, including forming a new entity (likely a Swiss foundation which is already in process), but, if necessary, maintain its US entity and 501c3 status for charitable giving purposes. The name of the new entity would be "The International Coalition of Team Rubicon," or something else mutually satisfactory. The US entity would be renamed "Supporters of The International Coalition of Team Rubicon," or something else mutually satisfactory. For the sake of clarity, TRG staff may be distributed, and in some cases may be co-located with a TR-X in order to reduce costs, but TRG shall not incur costs associated with an office in the United States. TRG employees will be encouraged to relocate to TRG's non-US headquarters, but for those employees that remain in the US, TRG shall use best efforts to co-locate them with TR-USA.

14. In conjunction with establishing this new non-US entity, TR-USA agrees to transfer the license to the new entity.

15. Partnerships with national organizations (both government and NGO) will be managed by the TR-X in that country. In the event there is no TR-X in that country, or in a country closely aligned in some way, TRG would manage those relationships. In addition, the Country Council may delegate international and multi-national partnerships to an appropriate TR-X or TRG.

16. TRG will be responsible for pursuing those objectives set by the Country Council pursuant to Section 5 of this agreement. For the sake of clarity, the parties and the TR Network intend for TRG to be responsible for expanding the Network, supporting the country units, and protecting the Team Rubicon brand internationally. TRG communications will be clear that TRG is not the parent organization of the TR Network nor of any TR-X. Further, TRG will not infer in any communication, public or private, that it a key enabler of TR-USA.

17. TRG will approach existing and past TRG funders for support during the time these agreements are being negotiated. TR-USA further agrees to advance TRG $1 million payable within 5 business days of signing a definitive agreement. This $1 million will be paid into an escrow account within 10 business days of the signing of this proposal by the parties and held in such account at a bank selected by TR-USA until the signing of mutually agreeable definitive agreement consistent with the terms of this proposal. Upon release of those funds to TRG, TRG will immediately change its name.





If these proposed terms are acceptable and we can begin drafting an agreement that memorializes these terms, please indicate your acceptance by signing below.


Best regards,


Geoffrey K. Trukenbrod
Chairman, Team Rubicon Global


Accepted by:


_____          _____

Adam Miller                                                      Date
Chairman, Team Rubicon





Exhibit 1 – TRG Annual Budgets

