UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TEAM RUBICON GLOBAL, LTD., a Delaware Corporation<br><br>*Plaintiff,*<br>v.<br>TEAM RUBICON, INC., a Minnesota Corporation<br><br>*Defendant,*<br><br>TEAM RUBICON, INC., a Minnesota Corporation<br><br>*Counterclaim Plaintiff,*<br>v.<br>TEAM RUBICON GLOBAL, LTD., a Delaware Corporation<br><br>*Counterclaim Defendant.* | Civ. No. 20-cv-2537 (LTS) (KNF) |

**SECOND DECLARATION OF BRYAN RIDDELL**

BRYAN RIDDELL, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury of the laws of the United States of America as follows:

1. I am over the age of 18 years old, and reside in Toronto, Canada. I am the Chief Executive Officer of Team Rubicon Canada ("TR-CAN"), a third party to the above-captioned action. In addition to this role, I am also a Primary Reserve Officer in Canadian Special Operations Forces Command. I received my undergraduate degree from St. Andrew's Presbyterian College, and a Master's Degree in Business Administration from Cornell. I have served with TR-CAN since May 2018. I submit this second declaration in support of Defendant and Counterclaim-Plaintiff Team Rubicon Inc.'s ("Team Rubicon") Motion for Preliminary

Injunction, and in reply to Team Rubicon Global's ("TRG") brief in opposition. I have personal knowledge of the facts set forth in this declaration and am competent to testify to such facts if called as a witness.

2. I have reviewed the Declaration of Melissa DeMeda, submitted to this Court on May 9, 2020, Dkt. No. 44 (the "DeMeda Decl.").

3. Ms. DeMeda was a volunteer of TR-CAN's from September 2017 through September 2019, at which time she was offered employment by TR-CAN.

4. While Ms. DeMeda was employed by TR-CAN, she worked primarily remotely from her residence in Surrey, British Columbia, over 2,500 miles from our national headquarters in Mississauga, Ontario. We communicated a minimum of three times per week. These communications occurred most often by video conferencing, and included TR-CAN's Director of Development, Ashley Pardy-Serre.

5. In August of 2019, TR-CAN sent three representatives to the Team Rubicon Leadership Conference in Estes Park, Colorado. I attended this conference, as did Ms. DeMeda, a volunteer at that time.

6. I have never expressed "an interest in disbanding the Team Rubicon Network by forcing the dissolution of [TRG]" during any of my communications with Ms. DeMeda. I had certainly mentioned to Ms. DeMeda that the dissolution of TRG had been considered during negotiations between TRG and Team Rubicon. I do not understand why she would include this statement in her declaration.

7. For the past few years, there has been some level of discord between Team Rubicon and TRG, which has caused friction and operational hurdles for TR-CAN and the other TR entities operating under TRG trademark sub-licenses ("TR-Xs").

8. As a result of this discord, there had been open and ongoing discussions within the Team Rubicon Network to eliminate the friction between Team Rubicon and TRG in order to improve coordination among all of the entities. Some of these discussions included proposals to disband or otherwise restructure TRG. These discussions to dissolve or rebrand were not a secret, and TRG was aware that they were occurring and would often participate in such discussions. Indeed, I personally discussed certain proposals with Mr. McNulty, including during 2018. Mr. McNulty informed me and others during this time that he was exploring a potential rebranding of TRG as one possible option to resolve the friction.

9. In July of 2019, I became aware that Team Rubicon and TRG had reached an agreement in principle about a "strategic realignment." As a result, at the time of the conference, I considered the relationship between TRG and Team Rubicon to be moving forward, but given the time it had taken to reach an agreement in principle, I remained concerned about the two organizations formalizing it, assuming that a subsequent, legally binding agreement would consume considerably more time. As the goal of TR-CAN was to support a successful realignment, I felt it was important to meet with the other CEOs in attendance at the Team Rubicon Leadership Conference to discuss the matter, and reduce any further friction within the Team Rubicon Network.

10. On August 17th, 2019, during our stay in Colorado for the Team Rubicon Leadership Conference, Ms. DeMeda informed me that she had been subjected to behavior that included unwanted sexual advances from the CEO of TR-UK and sexually inappropriate remarks by the CEO of TR-AUS. Ms. DeMeda appeared extremely upset about this behavior and expressed these feelings to me.

11. Almost immediately after Ms. DeMeda came to me with the allegations, I had a

discussion with the CEO of TR-UK, an individual with whom I had a positive working relationship for over a year.  During this conversation, I improperly questioned Ms. DeMeda's judgment leading up to the sexual harassment, as a result of mistaken beliefs I had held pertaining to Mr. Sharp's character.  Upon reflection, however, I recognized that such a reaction was incorrect, that my concern was misplaced, and that Ms. DeMeda's detailed report further amplified the need for a formal investigation into the circumstances.

12.     Despite my cordial exchange with Mr. Sharp, I immediately, and consistently expressed concern for Ms. DeMeda's safety and well-being, and explained that such conduct is not tolerated by the Team Rubicon Network and that she would have TR-CAN's full support as she moved forward with a formal complaint.  Indeed, I was obligated to encourage Ms. DeMeda to file a written complaint so that the incidents could be properly investigated, and I would have been required to provide notice of the harassment even if Ms. DeMeda had chosen not to formally report the misconduct.  I understand from reading Ms. Demeda's declaration that she felt "pressured" by me to include her allegations against Mr. Evans, the TR-AUS CEO.  At no time during this conversation did I intend to pressure Ms. DeMeda into filing her Complaint against Mr. Evans.  However, I expressed my support for Ms. Demeda's disclosure of all of the at-issue misconduct in order to fulfill my obligation to TR-CAN and the Team Rubicon Network more broadly, by protecting our employees and volunteers from harm and preserving a safe work environment.  A copy of that exchange, which occurred over WhatsApp, is provided hereto as **Exhibit A.**  Given the timing of our conversation—almost immediately after the harassment had occurred—Ms. DeMeda may have not interpreted my support and encouragement as they were intended, but because Ms. DeMeda never conveyed to me that her allegations against the TR-AUS CEO were not true (a position I understand from reading her declaration that she still takes

to this day), I was acting in strict accordance with my obligations to the organization for which I serve as CEO.  Out of further concern for Ms. DeMeda against the backdrop of an international incident, I also encouraged her to seek independent legal counsel, and assured that we would be fully supportive of this action.  She indicated that this would not be necessary.

13. I received from Team Rubicon the Team Rubicon formal investigative report in September of 2019.  I conveyed to Ms. DeMeda the findings of that investigation, including that it had found her allegations to be credible.  I did not intentionally withhold details of Team Rubicon's investigative report from Ms. DeMeda.  To the contrary, our conversations regarding its findings were frequent, and most of them were in the presence of another member of my team.  I do not recall Ms. DeMeda asking for a copy of it.

14. I understand from reading Ms. DeMeda's declaration that during a conversation we had in February 2020, during which I conveyed that her allegations had been found to be "not credible", she felt "shamed" by me and like I no longer believed the allegations against her.

15. I have never stated to Ms. DeMeda (or anyone) that TR-CAN found Ms. DeMeda's allegations to be not credible.  As I stated in my first declaration submitted to this Court, on November 5, 2019, I helped draft a letter to TRG on behalf of TR-CAN that outlined our position on the issues, and emphasized the need to protect our volunteers from future misconduct.  I would not have drafted or submitted this letter had I believed that Ms. DeMeda's allegations were not credible.

16. I do recall a conversation during which I relayed to Ms. DeMeda that TR-UK's investigation had found her allegations to be not credible and that TR-UK had concluded that no sexual harassment had actually occurred.  During such conversation, I did not intend to express in any way that TR-CAN or I believed her allegations were not credible.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of May 2020 in Oakville, Ontario, Canada.

_____
Bryan Riddell
Team Rubicon Canada