# EXHIBIT A

**Jeff G. Hammel**
Direct Dial: 212.906.1260
Jeff.Hammel@lw.com

53rd at Third
885 Third Avenue
New York, New York  10022-4834
Tel: +1.212.906.1200  Fax: +1.212.751.4864
www.lw.com

# LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | San Diego |
| Frankfurt | San Francisco |
| Hamburg | Seoul |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

April 17, 2020

**VIA EMAIL**

Majed Dakak
Kesselman Brantly Stockinger LLP
1230 Rosecrans Ave., Ste. 400
Manhattan Beach, CA 90266
Mdakak@kbslaw.com

Re:     Response to April 9, 2020 Letter re Motion for Preliminary Injunction

Dear Majed:

We represent Team Rubicon, Inc. ("Team Rubicon") and write in response to your letter dated April 9, 2020 and your follow-up email dated April 15, 2020.  As discussed during our meet and confer on April 13, 2020, our firm now represents Team Rubicon in connection with its intellectual property enforcement matters and in connection with the lawsuit filed by Team Rubicon Global ("TRG") on March 24, 2020.  Please direct all future correspondence to my office.

As an initial matter, Team Rubicon strongly disagrees with your characterization of the facts underlying the dispute between the parties.  Specifically, your contention that the Master Trademark Licensing Agreement (the "MTLA") entered into by Team Rubicon and TRG in October 2015 is still in force, and that Team Rubicon has "improperly claimed that it has terminated the MTLA," is plainly incorrect.  As you are aware, on or about September 5, 2019, Team Rubicon informed TRG that it had been put on notice of credible and disturbing accusations of gross sexual misconduct allegedly committed by two of the CEOs of certain of TRG's sublicensees.  Team Rubicon explained in its letter that it expected TRG to implement certain quality control measures to preserve and protect the integrity of the Team Rubicon brand and its various intellectual property assets (the "TR Marks").  Team Rubicon also requested that TRG provide training and implement other policies relating to the investigation and adjudication of harassment allegations within TRG and among its sublicensees.  TRG failed to implement any of the measures identified and further failed to provide any materials requested by Team Rubicon to assess TRG and its sublicensees' compliance with Team Rubicon's quality and brand standards.

On October 9, 2019, Team Rubicon sent another letter to TRG explaining that TRG's failure to take corrective action to protect the TR Marks constituted a material breach of the MTLA pursuant to Section 13(b)(iv).  Notably, as we are sure you are aware, and particularly

**LATHAM&WATKINS**LLP

given the sensitivities surrounding the protection of workers from harassment, TRG's failures also constitute a breach of Section 5 of the MTLA – among other provisions – including those related to TRG's obligations to control, police, and maintain the quality of the TR Marks. In any event, TRG was informed that it had 60-days in which to cure its breaches. Despite ample time to do so, TRG did not cure – or even attempt to cure – these breaches during this 60-day period. On December 9, 2019, having received no formal response to Team Rubicon's September or October letters, Team Rubicon terminated the MTLA in accordance with its terms. As a result of that termination, "all rights" granted to TRG under the agreement reverted to Team Rubicon, as the sole holder of the license. Additionally, upon termination, TRG was obligated to perform certain duties pursuant to Section 15 of the MTLA, including but not limited to immediately "ceas[ing] us[e] [of] the [TR Marks] or any term, phrase, or design that is confusingly similar" and assigning to Team Rubicon any "registration of a domain name utilizing one or more of the [TR Marks]." Of course, having terminated TRG's license of the TR Marks, the right of each of TRG's sublicenses to use the TR Marks was also terminated.

In light of the above, TRG's assertion that it is entitled to a preliminary injunction is legally untenable. *First*, as set out above, Team Rubicon's termination of the license was wholly proper. Indeed, the basis for that termination was not even contested by TRG from September through December 9, 2019. Team Rubicon must protect the goodwill of its brand, and thus, any information or statements made by Team Rubicon in defense of the TR Marks are not only truthful, but necessary and wholly proper.

*Second*, TRG has failed to cite any cognizable irreparable harm that would merit emergency injunctive relief. It is now April 2020. Eight months have passed since Team Rubicon first alerted TRG of the need to protect the TR Marks and cure its breaches of the MTLA, and four months have passed since Team Rubicon terminated the MTLA pursuant to its express terms. Team Rubicon has explained to TRG on multiple occasions that TRG has no right to continue to use and sub-license the TR Marks, including by additional letters dated December 9, 2019 and a cease and desist letter on January 8, 2020, requesting that TRG immediately stop infringing on Team Rubicon's marks and refrain from any further improper uses of Team Rubicon's intellectual property. Team Rubicon informed TRG that if TRG did not comply, it would have no choice but to vigorously pursue its rights under the law. As TRG took no actions to address Team Rubicon's concerns or its purported rights under the MTLA since September 2019, its claim that it is now entitled to emergency injunctive relief rings particularly hollow.

*Third*, given that TRG has no legal right to the TR Marks, there is no conceivable balance of equities in TRG's favor that would warrant equitable relief. Indeed, since TRG's unauthorized conduct is actively diminishing and jeopardizing the TR Marks, the balance of equities lies overwhelmingly in Team Rubicon's favor.

Notwithstanding the valid termination of the MTLA and all rights of the TR Marks reverting to Team Rubicon, TRG continues to use the TR Marks without Team Rubicon's consent or authorization in violation of state and federal law. This improper conduct includes, but is not limited to: (i) TRG's continued maintenance of the domain name *teamrubiconglobal.org*; (ii) TRG's use of the TR Marks in its correspondence and social media

communications; (iii) TRG's fundraising efforts conducted under the "Team Rubicon" name; and (iv) TRG's tortious interference with Team Rubicon's charitable mission and fundraising.[1] Such actions constitute trademark infringement and interfere with Team Rubicon's valid use of the TR Marks and intellectual property.

Even if the MTLA were still in force (it is not), TRG's ongoing conduct violates the terms of that agreement. Specifically, TRG has falsely and fraudulently misrepresented the nature of its (now terminated) relationship with Team Rubicon, and has purposefully misled donors and the general public by holding TRG out to be Team Rubicon's global parent. TRG's failure to accurately represent and uphold the quality of the TR Brand constitutes further misconduct under the MTLA in violation of various provisions within that agreement. *See, e.g.*, MTLA § 5(a), § 13(b)(iv). TRG has also employed the TR Marks within the United States, including by soliciting U.S.-based donors' operations within the United States. This too, is expressly prohibited by the MTLA, which defines the licensed territory to exclude the United States. *See, e.g.*, MTLA §§ 4(a),1(k). Aside from TRG's improper use of the TR Marks within the United States, TRG's solicitation from certain types of donors jeopardizes Team Rubicon's ability to partner with certain non-governmental organizations, thereby further interfering with Team Rubicon's business and mission. Accordingly, we write (again) to demand that TRG immediately cease and desist its infringing conduct.

Team Rubicon sincerely hopes that the parties are able to resolve their differences in a productive and collaborative way, including through confidential mediation. We continue to believe this to be the best option for all parties and remain open and willing to participate in such a dispute resolution process. However, if TRG does not immediately cease its infringing conduct, Team Rubicon will have no choice but to assert its own counterclaims and seek preliminary and permanent injunctive relief forbidding TRG (and, therefore, also its sublicensees) from, *inter alia*, using the TR Marks in commerce for any purpose, including in connection with any messages or solicitation of fundraising, on any of TRG's social media accounts and/or platforms, or in connection with the offer or acceptance of any of good(s) and/or service(s). With such action, Team Rubicon will also seek relief requiring TRG to assign its domain name to Team Rubicon. To be clear, TRG intends to file its own motion for a preliminary injunction to enjoin TRG's improper use of the TR Marks as detailed above if necessary.

If TRG is not amenable to mediation and believes it more productive for the parties to seek preliminary injunctive relief through the Court, we would propose that the parties submit their respective preliminary injunction motions on an agreed schedule so that both motions can be briefed and heard at the same time. In light of the ongoing pandemic and the devastating

---

[1] The offending conduct continues to this day. Indeed, on April 14, 2020, TRG circulated a mass-email containing misleading statements about Team Rubicon being a "member organization" in TRG's "global network" and in that email highlighted the works of Team Rubicon and TR-Canada which is no longer affiliated with TRG. This message, which was sent to—among others—Team Rubicon's potential donors and business partners, falsely insinuated that TRG was a global parent collecting donations to aid its apparent subsidiary entities, including Team Rubicon, which is provably incorrect and causes irreparable damage to Team Rubicon's fundraising efforts, especially in light of the ongoing global pandemic which Team Rubicon is rapidly responding to.

LATHAM&WATKINS LLP

health crisis unfolding in New York and throughout the rest of the country, the Court is likely faced with a complicated calendar and a variety of scheduling and logistical issues.  To that end, we propose that both TRG and Team Rubicon agree to file their respective motions and supporting briefs and declarations on or before April 24, 2020 and submit their respective oppositions to those motions on or before May 8, 2020.  Replies, if any, could be submitted on or before May 15, 2020.  The parties would ask that the Court set the hearing on the parties' respective motions as soon as it could be heard after May 15, 2020.  This approach would maximize judicial efficiency and reduce any undue burden on the Court and the parties.

Pursuant to local rules, Team Rubicon asks that you respond with your positions on this letter by Tuesday, April 21, and provide us with your availability for a telephonic meet and confer concerning Team Rubicon's need for injunctive relief and proposed joint briefing schedule on the parties' respective preliminary injunction motions.  For the avoidance of doubt, we believe that the filing of any motion for injunctive relief on behalf of TRG before we have that telephonic discussion and receive your response to this letter would constitute a violation of your meet-and-confer obligations.  It also makes far more sense to proceed in an orderly manner with the Court, especially in these circumstances.

Nothing contained in this letter constitutes an express or implied waiver of Team Rubicon's rights or remedies, all of which are expressly reserved.

Sincerely,

/s/ Jeff G. Hammel

Jeff G. Hammel


cc:    Mark Paluch (mpaluch@kbslaw.com)
       Amy Brantly (abrantly@kbslaw.com)